Todd Blanche
Acting Attorney General of the United States
Lisa C. Cartier Giroux
Rebecca R. Perez
Assistant United States Attorneys
Eastern District of Washington
Post Office Box 1494
Spokane, WA 99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JUSTICE FORALL,<br>BAJUN DHUNJIHA MAVALWALLA II,<br>and<br>JAC DALITSO ARCHER,<br><br>                    Defendants. | Case Nos.: 2:25-CR-00113-RLP-2,8,9<br><br>United States Motion in Limine Re Exclusion of Irrelevant Material<br><br><br>May 5, 2026 @ 10:30 a.m.<br>With Oral Argument |

Plaintiff, United States of America, by and through Lisa C. Cartier Giroux and Rebecca R. Perez, Assistant United States Attorneys for the Eastern District of Washington, hereby file the following motions in limine.

INTRODUCTION

This case is about the actions taken by each of the named defendants to impede officers in a way extending far beyond any First Amendment protections. Previous filings by Defendants have included significant irrelevant and

MOTION IN LIMINE - 1

inflammatory material, referencing hearsay and events which occurred months after the indictment in this case. *See* ECF 242 and 239. Defendants have referenced news articles with quotes by a former employee of the US Attorney's Office. ECF 242. Defendants further have provided in reciprocal discovery multiple training manuals and materials with instructions on "legal" protests.

To be sure, there are outside events which may be highly concerning or of interest to members of the public. And all are able – when such conduct is protected by the First Amendment – to protest, yell, hold signs, post comments, and many other forms of expression in support of or opposition to policies of the current administration. But a jury trial is not the place to engage in such protest. Jury trials are governed by the Rules of Evidence, which prohibit irrelevant evidence, hearsay, or evidence which can cause unfair prejudice, mislead the jury, or waste time. As courts have repeatedly noted, "a defendant's right to present evidence in support of his defense is not without limits" and therefore a trial judge may exclude evidence that is not supported by the Rules. *United States v. Espinoza-Baza,* 647 F.3d 1182, 1188 (9th Cir. 2011). Importantly, even "where evidence is of very slight (if any) probative value, …even a modest likelihood of unfair prejudice or a small risk of misleading the jury will justify excluding that evidence." *Id* at 1189; *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir. 1992). The United States therefore files this motion in limine to exclude specific arguments or witnesses which are not relevant under FRE 401 and 402; would cause unfair

MOTION IN LIMINE - 2

prejudice, confuse the issue, mislead the jury, and waste time under FRE 403; and are based on hearsay under FRE 801 and 802.

The United States' factual assertions surrounding this case have been previously filed (ECF 247 and 248).

## 1.     First Amendment and other Constitutional challenges

Defendants' pretrial motions to dismiss have focused on purported violations of the First Amendment. In sum, they argue that their behavior was constitutionally protected, and the case should be dismissed. Additionally, Defendant Archer has provided discovery explaining Defendant Archer's purported expertise as a leader trained in organizing what Defendant Archer claims to be legal First Amendment protected protests which they wish to argue to the jury.

Constitutional arguments in the context of this case are legal arguments and thus are appropriate for determination solely by a district court, not by a petit jury. This Court will either grant or deny Defendants' motion, and that will resolve the issue. If this Court grants the motion, the Court will dismiss and the charges will not go to a jury. In the alternative, if the Court denies Defendants' motion, the case will go to trial and the Court should exclude any argument or statements that Defendants' conduct was a proper First Amendment protest.

Constitutional analysis is complex, and requires analysis of case law and reasonable time, place, and manner restrictions and other specific legal considerations. *See ECF* 247. Thus, such analysis is properly considered in front of

MOTION IN LIMINE - 3

a judge, who can evaluate the case law and do the necessary legal research to make a proper conclusion. A jury does not have the ability to make such a conclusion, and permitting a First Amendment argument to be made in front of a jury would then force both sides to discuss case law—to essentially prove to the jury what was presented in both sides' pleadings in the motion to dismiss and response. That is undoubtedly confusing to the jury and is not proper.

The United States also moves to specifically exclude Defendant Archer or other defendants from testifying regarding any supposed expertise in the First Amendment. Again, this is a judicial determination, and the fact that a defendant makes the argument to the jury as opposed to a lawyer for the parties does not change the analysis. No witness in the case should be able to testify and no lawyer should be able to argue that any alleged criminal conduct in this case is protected by the First Amendment.

**2.      Richard Barker**

Richard Barker is a former acting US Attorney, due to his position as First Assistant US Attorney at the time of the previous US Attorney's departure. He left employment with the Department of Justice in July 2025. Following his exit, Mr. Barker has made various statements to the media, including implications that there was some level of coercion to file charges in this case, that he disapproved of the filing of charges, that he did not support the prosecution in this case, and that he

MOTION IN LIMINE - 4

does not believe a conspiracy existed. Defendants have used Mr. Barker's statements to the media and other online posts to support their motions to dismiss.

First, any statements or opinions by Mr. Barker (as with those of any other current or former DOJ employee) are not relevant. They are not probative and have no bearing on the actual issues for the jury to decide. *See* Fed.R.Evid. 402 and 403. Furthermore, the claims by Mr. Barker that he supposedly did not support an indictment are of zero relevance to whether the evidence proves beyond a reasonable doubt that the allegations are true. Counsel for the United States would certainly not be able to argue or call as a witness a former or current co-worker so the co-worker could opine that based on their review of the case, Defendants *did* conspire to impede officers. So too with Mr. Barker. He should not be called as a witness to opine that his opinion is that the Defendants did not conspire. Both approaches are prohibited by law as it is the jury's decision as to whether the United States proves each of the elements beyond a reasonable doubt. Any testimony from Mr. Barker should therefore be excluded[1].

---

[1] The United States notes that it is unaware of any jurisdiction in the United States that does not have an ethical bar on an attorney commenting on a former client's case if it involves revealing confidential information or using information learned during the representation to the client's disadvantage. Attorney-client privilege survives the end of representation, and the duty to maintain confidentiality continues indefinitely unless the client gives informed, written consent or the information is generally known.

MOTION IN LIMINE - 5

Second, in the event the Court permits Defendants to make those arguments and/or call Mr. Barker as a witness, the United States intends on impeaching Mr. Barker with documents and information that (1) while Mr. Barker was the leader of the United States Attorney's Office, he never expressed any opposition or concern to the assigned AUSA regarding the investigation of the case during their multiple discussions and debriefings, and consistently praised the work of the assigned AUSA[2]; (2) that he was never directed by DOJ or anyone else to take any particular action in this case, and; (3) that he had applied to become the appointed United States Attorney under the current administration, and in doing so portrayed himself as supportive of the current administration. In sum, there are many statements made or actions taken by Mr. Barker which directly contradict his recent messaging in the public arena. The United States believes the type of cross-examination which will inevitably occur if Mr. Barker is called as a witness will create an unnecessary and distracting side-show to the actual issues to be decided by the jury.

Finally, even if Mr. Barker is not called as a witness, his statements to the media should be excluded as hearsay under Fed. R. Evid. 802. They are out of

---

[2] If the Court permits such testimony, it may render one of the assigned AUSAs a witness at trial for impeachment purposes. Defendants should not be permitted to cause a conflict by presenting evidence that is inadmissible or  otherwise excludable under the rules of evidence.

MOTION IN LIMINE - 6

court statements offered for their truth, and Federal Rules of Evidence do not permit the admission of such statements by either party.

### 3. Department of Justice Policy or Internal Guidance

Defendants have also made repeated reference to efforts by DOJ to prosecute protestors or prioritize certain cases. In pretrial pleadings, Defendants have seemed to argue that the US Attorney's Office was somehow nefariously coerced or forced into investigating this case in some secret and mysterious manner. Prior to the filing of those pleadings, counsel for the United States told counsel for Defendants of the actual trajectory of this case. The United States will repeat that here to ensure clarity and truthfulness:

The Department of Justice always has priorities and focuses on the investigation and prosecution of certain types of crimes. This occurs with every administration. DOJ consistently investigates criminal offenses of which all parties in the criminal justice system are familiar—drug trafficking, various types of fraud, online crimes against children, and other crimes involving federal officers or agencies. When the U.S. Attorney's Office learned, on June 11th, 2025, of non-peaceful protests, including acts of destruction and impeding of officers, occurring at a federal facility, the United States Attorney's Office did what it always does—it worked with its federal law enforcement partners to investigate. Based on the investigation, evidence was presented to a federal grand jury. The grand jury chose to return an indictment.

MOTION IN LIMINE - 7

The U.S. Attorney's Office has consistently acted within the priorities of DOJ. But with regards to this prosecution, no individual from outside the U.S. Attorney's Office for the Eastern District of Washington has influenced any decision made by the assigned AUSAs in this case or by the entire management team of the office who has reviewed, supported, and approved all actions in this case.

Therefore, the United States moves to exclude reference to DOJ policy, media statements regarding DOJ priorities, or other allegations that this specific prosecution was improperly influenced. Again, that is misleading to the jury, particularly as the policy referenced by Defendants was issued *after the indictment in this case.* (ECF 251-1, discussing a presidential memo issued September 2025). The jury will be presented with evidence and will conclude whether or not the elements are met beyond a reasonable doubt. There is no DOJ memoranda or policy or news article which is probative on this issue. And importantly, any potential "defect in instituting the prosecution" ,including Constitutional violations, is properly made as a pretrial motion, not as a jury decision. F.R.Crim.P.12(b)(3).

There has been ample speculation, exaggeration, and total untruths set forth in the media and other locations. Freedom of the press and free speech of course do allow for speculation and for individuals to express their opinions; however,

MOTION IN LIMINE - 8

unfortunately in this matter, false narratives have been repeated in the media[3]. But that does not mean those opinions are correct, and it certainly does not mean that speculation and unsupported hearsay are admissible in a court proceeding. Fortunately, the rule of law exists to prevent irrelevant, false, and misleading evidence from swaying citizens and jurors who are entitled to make a decision based on admissible evidence.

**4.    References to Minnesota or other national immigration protests**

Defendants have repeatedly referenced recent immigration enforcement events in Minnesota or other parts of the country, including shootings or other acts by officers involved in immigration enforcement. *See* ECF 242, 239, and 250 and attachments.

Discussion or questioning surrounding irrelevant current events should be excluded. There are always news stories or events that impassion the reader. One could see how it would be very tempting for the government in a sex trafficking case to draw on Jeffrey Epstein and charge the jury not to let it happen again. Similarly, a defendant in a Spokane drug trafficking trial is not able to argue that the arrest and prosecution of El Chapo (a known drug trafficker associated with the Sinaloa Cartel previously prosecuted by DOJ) was unlawful or inappropriate, or

---

[3] Federal criminal prosecutors are not permitted pursuant to DOJ guidelines and state ethics rules generally, to comment on active or ongoing investigations to ensure a fair trial to the accused and to protect the integrity of the proceedings by not prejudicing them or causing undue condemnation of the accused.

MOTION IN LIMINE - 9

throw in mention of that case as part of its arguments. It is simply not relevant and confusing to the jury and does not have any probative value as to whether or not the Spokane defendant is guilty. The instant case needs to be adjudicated by applying the facts to the law and determining if the elements of the charged offenses have been proven beyond a reasonable doubt. Enflaming the passions of the jurors by referencing the events in Minnesota or similar is wholly inappropriate and should be precluded.

A shooting or other action by law enforcement in Minnesota or other any other state is not relevant to whether Defendants here violated the law. As noted in the United States' response to Defendant's motion to dismiss (ECF 247), conduct by different law enforcement officers, in different areas of the country, working different investigations with specific orders in different circumstances, facing different dangers and having different concerns have zero bearing on this case and are simply being used as a distraction from the facts of *this* case. Such high-profile events are inflammatory and unnecessarily conflate that conduct with what occurred here.

And importantly, the national events referenced by Defendants in their pleadings occurred *after* this case. Specifically, the shooting by ICE officers in Minnesota, a DOJ investigation into political leaders in Minnesota as reported by CBS, or any arrests or prosecution in Chicago (all as referenced in the declarations attached at ECF 241 and 253) occurred months after June 11, 2025. This timeline

MOTION IN LIMINE - 10

confirms the lack of probative value of these events and also Defendants' attempts to inject highly inflammatory material into trial. The implication is that since some federal law enforcement may have acted improperly (according to the media), the specific law enforcement officers in this case did so as well. That is misleading to the jury and is not proper grounds for argument, and should be excluded.

### 5.    Deportation proceedings

The protest on June 11th, 2025 began when co-defendant Ben Stuckart accompanied Cesar Alvarez Perez and Joswar Rodriguez Torres to the HSI building for their check-in. Mr. Torres and Mr. Perez had outstanding warrants and were therefore detained. There were 10 other individuals that day who also were detained based on their outstanding warrants. All were to be transported to Tacoma, WA for further court proceedings.

On October 8, 2025, an immigration court denied Mr. Torres' asylum claim and ordered Mr. Torres removed to Venezuela. Mr. Torres appealed the denial of his asylum claim, which remains pending. He also filed a habeas petition contesting the revocation of his parole, which was ultimately granted. *See Joswar Rodriguez Torres v Noem et al,* 2:25-CR-02697, 2026 WL 234076 (W.D. Wash. Jan 29, 2026). Based on the District Judge's ruling in that case, Mr. Torres has been released pending the appeal of the denial of his asylum claim. Notably, the ruling on the habeas petition did not affect the immigration judge's ruling on Mr. Torres' order of removal or the findings on the asylum claim. The appellate

MOTION IN LIMINE - 11

process is ongoing; the Board of Immigration Appeals has not yet issued a briefing schedule.

The United States moves to exclude reference to this decision by the Western District of Washington, or other mention of the immigration proceedings of Mr. Torres or any of the other detainees. Similar to above, these immigration proceedings are not relevant to the question of whether Defendants in this case meet the elements of conspiracy to impede officers. Whether or not any one of the detainees was ultimately deported, chose to self-deport, were released, or any number of other possible outcomes has no bearing on Defendants' actions on June 11, 2025. Argument along these lines will create a trial-within-a-trial situation, with jurors in this case being forced to consider or speculate on the intricacies of immigration law and other legal issues which are not the proper province of the jury. And the fact that Mr. Torres was released cannot be addressed without also acknowledging that this release followed an immigration judge's decision that the asylum claim was without merit, and the removal decision remains intact.

And importantly, Mr. Torres was not the only person being transported on June 11, 2025. There were other detainees in the HSI facility who were in need of transport, all of whom have presumably had some immigration hearing or process in the months since. Some of those may have been deported, some, like Mr. Perez, may have chosen to self-deport, some may still be awaiting further hearings, and some may have been released. But that does not matter. Regardless of events

MOTION IN LIMINE - 12

which occurred weeks or months following June 11, 2025, the federal officers on the ground that day had a duty to transport all those individuals to their immigration hearings in Tacoma, WA in a timely manner. They did not have the option of ignoring that duty to present those individuals before an immigration judge because they personally may have disagreed with the transport, or because the co-conspirators disagreed with someone being detained. Officers cannot simply look at an arrest warrant and decide that they do not wish to execute it.

A similar situation is sometimes seen in various types of criminal proceedings—a district judge may eventually elect to suppress evidence or dismiss a case for various legal or factual reasons. But that does not mean that the original arresting officer has the authority to pre-judge an arrest warrant and invalidate it on his or her own. Such a practice would truly create chaos with patrol officers acting as judges or prosecutors. Permitting jurors to hear argument or mention of later legal action by a reviewing judge would invite them, explicitly or implicitly, to evaluate the arresting officer's decision-making. That is misleading and confusing to the jury and should be excluded.

### 6. Jury Nullification

The United States objects to any suggestion to the jury that they should nullify. Nullification arguments are not simply explicit arguments that a jury can disregard the law; they include explicit or implicit reference to irrelevant or inflammatory material which can confuse and mislead the jury and provoke the

MOTION IN LIMINE - 13

finder of fact to make its decision based on something other than the law. Such arguments should be excluded during any phase of the trial, including jury selection, opening statements, examination of witnesses (including the Defendants, if they elect to testify), and closing arguments. The United States anticipates that Defendants may argue that prosecution of this case is unfair or unjust. Defendants should be ordered to refrain from making any reference to or argument for, or otherwise attempting to seek, jury nullification, as such references and arguments are barred under the law. This case should be tried on its merits, not on irrelevant evidence and impermissible arguments.

In *United States v. Thomas*, the Second Circuit stated that "we categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it when it is within their authority to prevent. ... A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty" .... Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power." 116 F.3d 606, 615 (2d Cir. 1997) (internal quotations and citations omitted).

The Ninth Circuit and every other circuit that has considered the issue has confirmed that defendants are not entitled to instruct the jury to nullify itself. *See, e.g., United States v. Powell*, 955 F.2d 1206, 1212-13 (9th Cir. 1991) (holding that the defendant has no right to instruct the jury to nullify itself); *United States v. Simpson*, 460 F.2d 515, 519 (9th Cir. 1972); see also *Thomas*, 116 F.3d at 616 n.9;

MOTION IN LIMINE - 14

*United States v. Edwards*, 101 F.3d 17, 19-20 (2d Cir. 1996); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996); *United States v. Mason*, 85 F.3d 471, 473 (10th Cir. 1996); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993).

Defendants should therefore be precluded from making argument or introducing any evidence—however subtle—that is designed to encourage the jury to render a verdict in their favor based on anything other than the assertion that defendant is not guilty of the crime charged in the indictment.

Dated this 13th day of April 2026

Todd Blanche
Acting Attorney General

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney

## **CERTIFICATION**

I hereby certify that on April 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney

MOTION IN LIMINE - 15