Todd Blanche
Attorney General of the United States
Lisa Cartier-Giroux
Rebecca R. Perez
Assistant United States Attorneys
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

BAJUN MAVAWALLA,

Defendant.

Case No.: 2:25-CR-00113-RLP-9

United States' Response to Defendant's Rule 29 Motion and Rule 33 Motion (ECF 374 and 392)

Plaintiff, United States of America, by and through Lisa Cartier-Giroux and Rebecca Perez Assistant United States Attorneys for the Eastern District of Washington, submits the following Response to Defendant Mavawalla's Rule 29 and Rule 33 Motions. (ECF 374 and 392). The United States responds as follows.

## INTRODUCTION

Following a lengthy trial, Defendant was found guilty by a jury. He now seeks a judgment of acquittal from this Court, essentially making the same arguments made during pretrial motions and during the closing arguments at trial, as well as leveling blatant insults and lies regarding counsel for the United States. Motions under Federal Rule of Criminal Procedure 29 and 33 have specific legal requirements. Many of Defendant's contentions are not relevant to those legal requirements. And while it is understood that Defendant continues to disagree with

the arguments made by the United States, Defendant's disagreement does not constitute grounds for a dismissal or for a new trial.

## FACTS

The United States hereby incorporates the facts as stated at ECF 446, United States Response to Forral Rule 29 and Rule 33.

## ARGUMENT

### 1. Rule 29 Motion for Judgment of Acquittal

Under Federal Rule of Criminal Procedure 29, a court may enter a judgment of acquittal when "evidence if insufficient to sustain a conviction." Courts have consistently held that "evidence supports a conviction if, in viewed in the light most favorable to the government, it would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *See eg United States v. Graf,* 610 F.3d 1148, 1166 (9th Cir. 2010); *see also United States v. Johnson*, 297 F.3d 845, 868 (9th Cir. 2002) (a Rule 29 motion will be granted "only if viewing the evidence in the light most favorable to the government, and granting to the government all reasonable inferences that may be drawn from the evidence, no rational trier of fact could find beyond a reasonable doubt that the defendant committed the crime"); *United States v. Disla*, 805 F.2d 1340, 1348 (9th Cir. 1986) ("A conviction is supported by the evidence if, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences, there was relevant evidence from which the jury could reasonably have found the defendant guilty beyond a reasonable doubt."); *United States v. Hazeem*, 679 F.2d 770, 772 (9th Cir. 1982) (in deciding a Rule 29 motion, the "trial court must determine whether, viewing the evidence in the light most favorable to the government, the jury could reasonably find the defendant guilty beyond a reasonable doubt"). Such motions may be made before submission of the case to the jury, or after the jury verdict. Fed. Crim R. 29(a), (c).

A "rational juror" may make reasonable inferences from both direct and circumstantial evidence, and circumstantial evidence alone may be sufficient to form a basis for conviction. *United States v. Yoshida,* 303 F.3d 1145, 1151 (9th Cir. 2002); *United States v. Reyes-Alvarado,* 963 F.2d 1184, 1188 (9th Cir. 1992). And importantly, juries are not required to believe any particular witness—jurors are the finders of fact, who weigh and determine the credibility (or not) of any particular witness. *United States v. Scheffer,* 523 U.S. 303, 313 (1998). A jury is also free to disbelieve a defendant's testimony and infer the opposite of the testimony to support its verdict. *United States v. Cordova Barajas*, 360 F.3d 1037, 1041 (9th Cir. 2004).

Here, the United States presented days-worth of evidence and hours of video depicting the events of June 11, 2025. Defendants Mavalwalla and Archer presented witnesses and testified on their own behalf.

Defendant makes several contentions in support of his Rule 29 motion. Much of the argument does not pertain to the legal requirements under Rule 29 and is irrelevant. The United States will nonetheless address each argument in turn.

**a. Factual disputes regarding Defendant's conduct**

Most jury trials present factual disputes for the jury to resolve by applying the facts to the law given by the district court in its instructions. And even following the presentation of evidence, and after the jury makes its decision, factual disputes between the parties will obviously remain. But the existence of a disagreement between the parties on the facts does not mean the government's evidence was insufficient. As described above, a reviewing judge must view those factual disputes through the lens of any rational trier of fact, taking every inference in favor of the prosecution. Here, Defendant makes several claims, disputing the United States' theory of the case. The United States acknowledges that Defendant disputes much of what was presented. After careful consideration of the evidence and the law as presented to it by the Court, the jury chose to convict on some

questions and not on others. Defendant's continued beliefs do not change that fact. And while the United States here addresses each disputed factual issue at trial, none of them are dispositive as to the ultimate outcome of the case.

Defendant first disputes the elbow strike (also listed as "the push" in Defendant's briefing, ECF 374 at 3 and 6). At trial, the United States presented various views of video footage from the south gate area, which showed Defendants Mavawalla, Archer, and others' conduct against the federal agents who attempted to move them from the opening of the south gate to allow the federal vehicles to exit. At one point, depicted in Trial Exhibit 87, which was played to the jury multiple times during trial, the United States argued it appeared Defendant pushed one of the federal agents, and also made what appeared to be an elbow strike against the officer. The issue was discussed multiple times at trial, with witnesses describing what they saw with respect to Defendant's conduct and various video viewpoints being played. (ECF 433-12 at 14 (McIntosh), 433-2 at 30-32 (Burlingame[1]), Trial Exhibits 86, 87, 24, 25). Law enforcement at the south gate testified to the pushing back and shoving by the crowd as well as the demeanor, words, and behavior of those who were present. ECF 433-1 at 33-68 (Tomaso), 433-5 at 18-29 (Laforte), 433-8 at 13-34 (McSullivan). Those that witnessed the push and elbow strike testified alongside the video. Based on this, a reasonable juror could watch the videos, consider the testimony given, and have concluded that the elbow strike and/or pushing by Defendant *did* occur. There is sufficient

[1] Based on Officer Burlingame's demonstrated bias, as presented during his later testimony, the United States argued to the jury that his testimony could be ignored and the jury could rely only on other testimony and the videos. However, Officer Burlingame's testimony was not stricken from the record, and the jury was free to rely on it if they chose to do so. Additionally, Officer Burlingame's testimony was consistent with the videos as well as the testimony from other law enforcement witnesses on scene.

evidence in the record for them to make such a determination, when viewed in the light most favorable to the government.

Defendant notes that the jury verdict supports the contention that the elbow strike did not occur, as Defendant was found guilty of aiding and abetting in the offense.  The "no" answers to the various special verdict questions do not stand for Defendant's proposition. The verdict sheet indicates the jury simply found that as to Defendant, the evidence did not show that every element of Instruction No. 15 were met.. Rather, in their verdict, they found that there was proof beyond a reasonable doubt that as to Defendant as to each element of Instruction No. 17. Even if the jury determined that the elbow strike happened as the United States argued, they may have still correctly marked "no" on the special verdict question if, for example, they found Defendant was aware of the agreement but did not join it, but all of the other elements of Instruction No. 15 were met. The jury's decision as indicated on the special verdict form here does not support Defendant's contention.

Defendant's second factual contention pertains to his conduct as he ran to the south gate area. Again, the evidence at trial was sufficient that a rational juror could indeed have determined that Defendant sprinted to the south gate, leading the charge to the area and making sure others were following him, thus aiding and abetting in a conspiracy. As presented at trial, Trial Exhibit 19A showed Defendant sprinting in front of the crowd, appearing to look and yell over his right shoulder and then his left to encourage the crowd, and then reaching the south gate almost at the exact same moment the gate was fully open and the federal agent was attempting to exit. Trial Exhibit 22 showed another angle of the incident, with Defendant shown as the first person to begin sprinting toward the south gate, with many individuals following behind him. That exhibit similarly shows Defendant turn his head behind him, which the United States argued was to yell for others to follow or to make sure they were following. Trial Exhibit 22A highlighted

Defendant's running path. All exhibits showed Defendant sprinting, being the first to do so, running faster than any other individual in the crowd at the time, turning his head, the crowd beginning to follow, Defendant ignoring oncoming traffic, and not stopping or slowing until he reached the gate and stood in front of the departing federal agent. In light of the legal standard applicable here, a rational juror could have believed that Defendant did indeed lead the charge to the south gate and based on the totality of the evidence presented, aided and abetted the conspiracy.

Defendant also argues he did not make a threat while at the south gate. In doing so, he accuses the United States of influencing an agent to make certain statements. ECF 374 at 18. There is no reason, in this case or any other, to resort to unprofessional and baseless personal attacks. If counsel for Defendant has evidence of misconduct, the United States encourages him to bring it in sufficient detail where it can be put to the test instead of making a swipe in a pleading. There was no improper manipulation of a witness, and Defendant's disappointment in being found guilty does not justify bad faith accusations.

What does exist as evidence in this case shows that Defendant did indeed say something to the effect of "the cops can't help you it's against state law … nobody is going to move us" and then a few seconds later stated, "Make sure people stay at the front! Make sure people block every exit!". Trial Exhibit 23. Defendant then ordered, "Keep the bus blocked!" *Id.* Trial Exhibit 23 depicts the "cops won't help you" statements, with the same voice a few seconds later making the other statements. The speaker is not visible in Trial Exhibit 23. Trial Exhibit 88 is another perspective of a similar time frame, with Defendant at second 22 appearing to take a deep breath and then turning and yelling the statements. His arms were raised and his mouth (when visible) matched the words being said. His arm moved in conjunction with the words, with his raised fist moving in time with each syllable. On direct examination, Officer Kevin Wilks testified he was the first vehicle to attempt to leave the south gated area. ECF 379 at 6-7, 10. He explained a

person (later confirmed to be Defendant) stopped approximately 4 feet from the front of Officer Wilks' vehicle, blocking him in. That same person said something to him: "This is Washington State, the police aren't going to help you." Later, Officer Wilks heard the same person state "block all the exits". *Id.* at 9. And finally, Defendant himself confirmed that he said something to the effect of "the cops won't held you. It's against state law. Nobody is going to move us." ECF 433-10 at 35-36. He later confirmed that he said "make sure to stay in the front and to block every exit." Transcript 41. On cross-examination, Defendant denied saying anything about the bus, and then said it was hard to tell, and then confirmed something was said but did not remember, and then stated he "maybe" said to block the bus. ECF 433-10 at 42. Defendant acknowledged the hand movements and statement it was for effective communication, and that he wanted to make sure individuals did not try to exit from another direction. *Id.* at 42-43.

In sum, Defendant's own statements made at trial confirm what the video shows. The jury may have reasonably ignored Defendant's attempts to distance himself from those statements based on the exhibits. Therefore, a rational juror could have reasonably concluded that Defendant yelled at Officer Wilks that no one was coming to help him, and that all the exits needed to be blocked, and to keep the white bus blocked. And those statements, based on the context in which they were made, could reasonably have been part of a rational juror's assessment, based on the totality of the evidence, as the verdict sheet indicated, that he was aiding or abetting others to commit the offense.

Defendant also brings up the kicking of the smoke canister, again leveling unprofessional attacks and failing to cite the actual evidence in the case. With respect to Defendant's use of the smoke canister, Trial Exhibit 73A was presented, which showed Defendant standing in the front of the dispersing crowd after the second round of less-lethal munitions had been deployed. Defendant was not retreating. Rather, it appeared he was looking for the smoke canisters to be able to

kick back at officers. Once he saw one, he did just that. The canister was kicked north and west, toward the line of law enforcement. As discussed during Defendant's testimony, Defendant acknowledged that he chose to stay in the one spot on the street where munitions were being deployed, and that if he had wished to avoid being affected by munitions, he could have moved. ECF 433-10 at 93. And this kicking of the canister followed hours of Defendant and others being told to disperse, the deployment of a first round of smoke and less-lethal munitions, Defendant being sprayed with pepper spray, and Defendant standing in front of the crowd slowly circling with his arms outstretched and yelling "come on, fucking do it" and repeatedly taunting officers, as depicted in Trial Exhibits 64, 65, 66, and 68. With the context of the entirety of the evidence, a reasonable juror could have concluded that Defendant's conduct in kicking the smoke canister was evidence of his intent and an act to assist the conspiracy.

**b. The Court's Instruction No. 17 (Aiding and Abetting) is legally sufficient (Response to ECF 392, Supplemental Argument)**

Defendant argues that the Court's instruction to the jury as to the charge of Aiding Abetting, Instruction No. 17 (ECF No. 361) was defective. Defendant made no such argument at the time of objections to the instructions prior to the Court's instructing the jury. *See* ECF No. 431-7 at 14-15. The objection made at that time was that there was insufficient evidence to submit that count to the jury. *Id.* Defendant now alleges that the § 372 did not require proof of an overt act, arguing that the Court added an unnecessary element to Jury Instruction 15, therefore allowing for in incorrect theory of aiding and abetting. However, in requiring the United States to prove that an overt act was committed by at least one member of the conspiracy, the United States ultimately carried a higher evidentiary burden, but the elements of aiding and abetting remained unchanged and Defendant could not be wrongfully convicted if a juror followed the jury instructions given by the Court.

It is true that to convict a person of Conspiracy under 18 U.S.C. § 372, unlike 18 U.S.C. § 371, which is a general conspiracy statute, the United States does not have to prove that a conspirator "[did] any act to effect the object of the conspiracy". *United States v. Shabani*, 513 U.S. 10, 14 (1994). The criminal agreement itself is the *actus reus*. However, in understanding Aiding and Abetting liability, the Ninth Circuit's commentary to the Aiding and Abetting Instruction (Instruction 4.1) is helpful:

> The Supreme Court has stated that the federal aiding and abetting statute has two primary components: "a person is liable under § 2 if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). The defendant's conduct need not facilitate each and every element of the crime; a defendant can be convicted as an aider and abettor even if the defendant's conduct "relates to only one (or some) of a crime's phases or elements." *Id.* at 73. The intent requirement is satisfied when a person actively participates in a criminal venture with advance knowledge of the circumstances constituting the elements of the charged offense. *Id.* at 77.
>
> Ninth Circuit Model Criminal Jury Instructions § 4.1 (2022)

Thus, a defendant could only be convicted when the person takes an affirmative act in furtherance of the conspiracy with the intent of facilitating the offense's commission. A conviction for aiding and abetting is justified when the government proves that the defendant aided in committing an overt act done in furtherance of the crime where "he shared in the criminal intent of the principal". *Hernandez v. United States*, 300 F.2d 114, 123 (9th Cir. 1962) (*quoting Johnson v. United States*, 195 F.2d 673, 675 (8th Cir. 1952)). Overt acts are simply affirmative steps taken "for the purpose of carrying out the conspiracy" – they are acts in furtherance of the offense which do not have to be unlawful, as correctly defined by the Court in Instruction No. 14.

To be convicted of aiding and abetting a drug conspiracy in violation of 21 U.S.C. § 846, a crime which like § 872 does not require the United States to prove overt acts, the aider and abettor nonetheless **would have to do something** to aid, counsel, command, induce, or procure a principal to [[distribute] [manufacture]] a [specified controlled substance], with the intent to facilitate the drug conspiracy. *See* Ninth Circuit Model Criminal Jury Instructions § 12.5 (2022).

Thus, the element of an act done with the intent to facilitate the substantive offense is always required for an individual to be convicted of aiding and abetting in a crime, even when the overt act element is not required in the underlying substantive offense. Defendant cannot therefore explain how a juror who follows the Court's Instruction in Instruction No. 17 could wrongfully convict a defendant using the alleged added "problem" element. It is impossible. Even if a jury found that a defendant aided, counselled, commanded, induced, or procured the conspirator in the performance of an overt act (ie the "problem" element) that was committed by the conspirator for the purpose of carrying out the conspiracy, and defendant did so with the intent to facilitate the conspiracy, the elements of aiding and abetting would be met (assuming he acted before the crime was completed).

Defendant further claims that Instruction No. 17, which tracks Ninth Circuit Model Jury Instruction 4.1 for Aiding and Abetting should have contained additional language, specifically a specific intent instruction. The aiding and abetting instruction given by the Court clearly requires that in addition to the commission of the offense by the principal, that the defendant shared the principal's knowledge of the underlying criminal act, and acted with the intent to help the principal facilitate the conspiracy. The United States submits that the model instruction is the appropriate instruction and was correctly given to the jury.

**(ii) Defendant's motion fails to address how aiding and abetting a conspiracy is unconstitutionally vague as applied to Defendant**

Defendant argues that the addition of "aiding and abetting" somehow renders a conspiracy charge for which he was convicted unconstitutionally vague. ECF No. 392 at 6. However, "aiding and abetting' under 18 U.S.C. § 2, "is not a separate federal crime, but rather a different theory of liability for the same offense". *United States v. Garcia*, 400 F.3d 816, 817 (9th Cir. 2005). Penal statutes are not unconstitutionally vague if they "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (citations omitted). The vagueness doctrine is rooted in fairness and is "not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *Colten v. Kentucky*, 407 U.S. 104, 109 (1972). As the Ninth Circuit has stated:

> [T]he Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. Perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.

*United States v. Schales*, 546 F.3d 965, 972 (9th Cir. 2008) (*quoting Hamling v. U.S*, 418 U.S. 87, 111 (1974), and *United States v. Williams*, 128 S. Ct. 1830, 1845 (2008)). The Ninth Circuit has previously rejected an as-applied vagueness challenge to § 372. *See United States v. Fulbright*, 105 F.3d 443, 452 (9th Cir. 1997), *overruled on other grounds by United States v. Heredia*, 483 F.3d 913, 921 (9th Cir. 2007).

In his argument, Defendant takes issue with the Model Ninth Circuit Jury instruction for Aiding and Abetting as well as the instruction for Conspiracy as opposed to statute set forth at 18 U.S.C. § 372 itself. ECF No. 392 at 10-11. Defendant tries mightily to make the simple terms of the instruction seem confusing. But Defendant fails to set forth what specifically in the 18 U.S.C. § 372 Conspiracy statute fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement. The Ninth Circuit has expressly rejected attempts to use "[f]anciful hypotheticals ... to create vagueness arguments." *Schales*, at 973. Relying on Supreme Court guidance, the Ninth Circuit explained:

> [T]he problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt. [W]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.

*Id.* (*quoting Williams*, 128 S. Ct. at 1846). Defendant's assertions are simply post-trial sufficiency of the evidence arguments which do not turn on whether the statute is unconstitutionally vague, but dependent on the evidence presented and were resolved by the jury.

**(iii) Aiding and Abetting a Conspiracy is a federal offense**

Defendant acknowledges in his briefing that the Ninth Circuit has held that a defendant can be convicted of aiding and abetting a conspiracy. ECF No. 392 at 10. The Court should follow Ninth Circuit precedent and deny Defendant's motion to dismiss on this ground.

**c. Alleged discovery violations/cross examination questions**

During cross examination, in the midst of questioning regarding Defendant's conduct on the south line, the following statements were made:

Q. And didn't you tell someone on Reddit, with respect to moving munitions, that you were returning that smoking, burning garbage that the police were throwing at us?
A. I did not say that.
Q. You didn't say that?
A. I did not say that I returned burning, smoking munitions.
Q. You typed -- and this is your quote -- in response to talking about smoke canisters being thrown and calling those smoke canisters fireworks, you said, quote: "No. Returning the smoking, burning garbage that the police were throwing at us."
A. I can't see the quote.
Q. Did you say that?
A. I can't see the quote.
Q. But did you say that?
A. I don't recall specifically. If you'd like to put the quote up, then I can testify easier.
Q. Do you recall saying something like that?
A. Something to the effect that the crowd had returned munitions, yes.

The questioning then moved on. [2]

[2] Following cross-examination, counsel for Defendant requested a sidebar. During the brief conversation, he indicated the Reddit posts had not been disclosed. The United States responded that the posts were in a report, in Defendant's phone, and in Reddit posts. The Judge responded that if there was a discovery violation or a misrepresentation, it could be dealt with in a jury instruction, and if there as something further to be addressed, it could be done at a break. Transcript 96-98.. The United States later learned that referenced statement came from a publicly-available Reddit post found online. Defendant did not raise the issue again during trial.

Defendant highlights the initial question regarding the returning of smoking garbage, accusing the United States of bad faith and misstating the evidence. This argument is not relevant to a Rule 29 motion. But even if it was, those questions do not remotely rise to the level of prosecutorial misconduct. "Prosecutorial misconduct invites reversal if it appears more probable than not that the alleged misconduct affected the jury's verdict." *United States v. Simtob,* 901 F.2d 799, 86 (9th Cir. 1990); *United states v. Milles,* 363 Fed. Ax. 506, 508-09 (9th Cir. 2010).

Here, Defendant does not and cannot even make the argument that anything with respect to this line of questioning affected the verdict. It took less than one minute in the middle of 7 days of evidence. And Defendant himself acknowledged making the statements or "something to that effect that the crowd had returned munitions." This fact was already well-established in the many trial exhibits and the testimony. There is nothing about these questions which were improper, the evidence was not introduced in the United States' case-in-chief, were publicly available on Reddit, and they were Defendant's own statements posted on his Reddit —the United States had a good faith basis to ask if Defendant had made the statements, Defendant initially denied but then acknowledged he had, and the questioning moved on. Defendant requested a sidebar but then did not further request any discussion on the issue or any special instructions, to the extent such an instruction would even have been required. There is certainly nothing here which affects a Rule 29 motion, or any other post-trial motions which would lead to a dismissal or new trial.

**d. Grand jury proceedings**

The grand jury has a "singular role" in determining probable cause. *Kaley v. United States,* 571 U.S. 320, 329 (2014). In fact, a grand jury's decision "conclusively determines the existence of probable cause" and there is "no authority for looking into and revising the judgment of the grand jury upon the

evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof." *Id.*

Additionally, "any errors concerning evidence presented to the grand jury cannot trigger dismissal of new charges or a new trial when a subsequent petit jury returns a verdict of guilty." *United States v. Harmon,* 833 F.3d 1199, 1204 (9th Cir. 2016); *United States v. Mechanik,* 475 U.S. 66, 70 (1986) (following a petit jury verdict, "any error in a grand jury proceeding connected with the charging decision [is] harmless beyond a reasonable doubt."). This applies even to potential prosecutorial misconduct. *Id.*

Defendant states there was no evidence of probable cause presented to the grand jury, and also of course alleges misconduct when testimony was introduced which supposedly misconstrued the events. The United States denies allegations of misconduct. But in light of the clear precedent which resolves Defendant's argument, there is no need to re-hash the evidence in this case, or re-hash the factual disputes which were resolved by the jury's verdict. Interestingly, Defendant also claims that the failure to use the word "conspiracy" during the grand jury testimony created a fault in the proceedings, yet Defendant made arguments that the United States should be precluded from using the word "conspiracy" or "co-conspirators" at trial. ECF 293. Defendant somehow wishes evidence which he purportedly believes to be improper at trial to be used *more* during grand jury proceedings. In sum, Defendant makes a convoluted argument. But ultimately, the law here is clear—there is no reason to dismiss or set aside the grand jury's decision following a petit jury verdict.

**2. Rule 33 Motion for New Trial**

Under Federal Criminal Rule 33, "a court may vacate any judgment and grant a new trial if the interest of justice so requires." This decision is within the "discretion of the district judge" and "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v.*

*Pimentel,* 654 F.2d 538, 545 (9th Cir. 1981). In reviewing the trial evidence, "the district court need not view the evidence in the light most favorable to the verdict; it may weight the evidence and in so doing evaluate for itself the credibility of the witnesses." *United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1213 (9th Cir. 1992).

Defendant provides no additional reasons in support of his Rule 33 motion, other than the above-addressed Rule 29 arguments. As those arguments have no merit, as articulated above, there is no reason here to grant Defendant a new trial.

Defendant also provides a conclusion paragraph to his briefing, leveling aggressively false accusations. The United States reiterates its position as stated during pretrial briefing at ECF 247 and 262: there was nothing political or coerced or remotely improper in the investigation, charging, or prosecution of Defendants. The opinion of an attention-seeking former employee who chose to publicly comment on a former case and client does not change that. That opinion, or frankly the uninformed opinions of any member of the public, is not remotely relevant. And Defendant's claims of someone from DOJ contacting a specific AUSA and striking a deal to indict the case are unequivocally false. Defendant has zero evidence of anything unethical or improper occurring and seems to be simply throwing theories at the wall to see what sticks.

**CONCLUSION**

Wild theories unsupported by evidence are not reason to grant a motion to dismiss or a new trial. The evidence which was presented over 7 days of trial, hours of testimony, and hundreds of exhibits support a rational jury's finding of guilt after careful consideration of the facts and the law. Although Defendant disputes the evidence presented, the jury makes the determinations as to the facts.

There was no miscarriage of justice in its presentation, and the motion to dismiss and motion for new trial should be denied.

Dated: October 26, 2026.

Todd Blanche
Attorney General

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that I have emailed the document to

*s/ Rebecca R. Perez*
Rebecca R. Perez
Assistant United States Attorney